UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case No. 25-cr-100 (TSC) |
| | : | |
| RETHA KOEFOED, | : | |
| | : | |
| Defendant. | : | |

## GOVERNMENT'S SENTENCING MEMORANDUM

The Defendant, Retha Suzanna Koefoed, pled guilty to possessing a firearm after having previously been convicted of Carrying a Pistol without a License, a crime punishable by imprisonment for a term exceeding one year. For the reasons stated herein, the Government respectfully requests that the Court sentence the Defendant to a Guidelines split sentence of 5 months confinement and 5 months home confinement.

## BACKGROUND

On January 14, 2025, at approximately 8:30 p.m., Metropolitan Police Department ("MPD") officers observed the defendant exit the front passenger door of a gray Nissan Altima parked in the 4200 block of 4th Street SE, Washington, D.C, holding an open container of alcohol and two cups. Officers approached the defendant and the other passengers, Ronald Henderson and Larry Bing. The defendant was standing with a slight hunch over her waistband and officers asked her if she had a gun; she responded that she did not. Officers asked the defendant to unzip her jacket. The defendant complied and revealed the outline of a firearm in her waistband.



From the defendant's waistband, officers retrieved a 9-millimeter Glock 43, bearing serial number AFRK401, that contained one round in the chamber and six rounds of ammunition in the six-round capacity magazine. Law enforcement arrested the defendant and searched her incident to arrest. During that search, law enforcement recovered a set of keys to a Mercedes Benz parked in the same parking lot.

From the Mercedes driver's side floorboard, officers found a second firearm—a black binary 9-millimeter Glock 17, bearing serial number CDFL829, that contained one round in the chamber and 27 rounds of ammunition inside a large capacity feeding device that has the capacity to hold up to 31 rounds of ammunition.





The defendant possessed these firearms on January 14, 2025, knowing that she was a prohibited person with her prior felony conviction—also for illegally carrying a firearm.

The driver and owner of the Nissan vehicle that the defendant was drinking in was Ronald Henderson. A search of the Henderson's jacket revealed 36 clear zips containing white powdery substance (field-tested positive for fentanyl weighing 8.16 grams, 28 clear zips containing white powdery substance (field-tested positive for cocaine base weighing 6.26 grams, a clear plastic bag containing 3.54 grams of crack cocaine (field tested positive for cocaine base), and $ 85 dollars in U.S currency. In the trunk of the Nissan, officers found an 8-ounce bottle of Deer Park water bottle containing 3 ounces of amber liquid with an odor consistent with PCP (Phencyclidine).

## PROCEDURAL HISTORY

On April 8, 2025, the Defendant was indicted by a federal Grand Jury for one count of possession of a firearm by a prohibited person in violation of 18 U.S.C. § 922(g)(1). On April 15, 2025, the defendant was released with conditions and remained compliant. On August 25, 2025, the defendant pled guilty to the Indictment pursuant to a written plea argument and is now before the Court for sentencing.

## SENTENCING GUIDELINES

The Government concurs with the Pre-Sentence Report [ECF No. 21] ("PSR") calculation that the Defendant's base offense level is 14, with a two-point reduction for acceptance and responsibility pursuant to USSG § 3E1.1(a). PSR at ¶¶ 19-26. The Government also concurs that the Defendant is not eligible for a zero-point offender adjustment. PSR at ¶ 27. Thus, based upon the final PSR released on December 5, 2025, the resultant total offense level of 12, along with a

Criminal History Category of I, results in a corresponding range of imprisonment under the Guidelines of 10 months to 16 months. PSR at ¶ 85. The Government agreed to cap its allocation at the bottom of the applicable guideline range as ultimately decided by the Court. If the Guideline Range falls within zone C, pursuant to USSG § 5C1.1(d)(2), the Government agreed to cap its allocation to an even split between one-half of the minimum term of incarceration, and as a condition of supervised released, a term of home confinement.

## **LEGAL STANDARDS**

When determining the appropriate sentence, the district court should consider all of the applicable factors set forth in Title 18, United States Code, Section 3553(a). *See United States v. Gall*, 552 U.S. 38, 49-50 (2007). Indeed, the Guidelines themselves are designed to calculate sentences in a way that implements the considerations relevant to sentencing as articulated in Section 3553(a). *United States v. Rita*, 551 U.S. 338, 348-50 (2007). The Section 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed correctional treatment; (3) the kinds of sentences available; (4) the sentencing range established by the Sentencing Guidelines; (5) any related Sentencing Commission policy statements; (6) the need to avoid unwarranted sentence disparities; and (7) the need for restitution to any victims.

In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court held that the mandatory application of the United States Sentencing Guidelines violates the Sixth Amendment principles articulated in *Blakely v. Washington*, 542 U.S. 296 (2004). As a consequence, the Court invalidated the statutory provision that made the Guidelines mandatory. *Booker*, 543 U.S. at 245.

Nonetheless, a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. *See Gall*, 128 S. Ct. at 598 ("As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark"). The Guidelines are the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions. *See Rita*, 551 U.S. at 338; *see also* United States Sentencing Comm'n, Supplementary Report on the Initial Guidelines and Policy Statements 16-17 (1987); 28 U.S.C. § 994(m) (requiring Commission to "ascertain the average sentences imposed . . . prior to the creation of the Commission"); Comprehensive Crime Control Act of 1984, S. Rep. No. 98-225, at 438 (Commission should produce a "complete set of guidelines that covers in one manner or another all important variations that commonly may be expected in criminal cases"). In addition, the Sentencing Commission has continued to study district court and appellate sentencing decisions and to "modify its Guidelines in light of what it learns." *Booker*, 543 U.S. at 264 (the Sentencing Commission will continue "collecting information about actual district court sentencing decisions . . . and revising the Guidelines accordingly").

The Guidelines themselves are designed to calculate sentences in a way that implements the considerations relevant to sentencing as articulated in Section 3553(a). Any Guidelines calculation is based on the individual characteristics of the offense and the offender, as required by Section 3553(a)(1). The Guidelines themselves thus seek to implement—in a fair and uniform way—the offense specific characteristics that, themselves, comprise the "individualized assessment" the Supreme Court commends in *Gall*. *See Gall*, 552 U.S. at 50.

## ARGUMENT

A sentence of 5 months confinement followed by 5 months of home confinement, as a

term of supervised release, in this case is appropriate and balances the repeated nature of the defendant's conduct with the defendant's rehabilitation.

1. **The Nature, Circumstances, and Seriousness of the Offense**

Although "possessory" gun offenses are often perceived to be "minor" ones, they are anything but. As the Court is well aware, our community in recent years has faced staggering levels of gun violence. D.C. saw over 274 homicides in 2023 (the year this instant offense was committed), the highest level in 20 years. *See* MPD, *District Crime Data at a Glance*.[1] About 86 percent of the 274 homicides in 2023 involved the use of a firearm. *See* MPD, *Annual Report 2023*, 37.[2] Thus, merely possessing a firearm is serious. After all, all instances of gun violence are also instances of gun possession.

Here, the defendant possessed a firearm also while drinking. On January 14, 2025 – the night the Defendant was arrested – officers found a firearm in the defendant's waistband while also holding an open container of alcohol as well as two cups. The consumption of alcohol severely impairs judgement and perception; alcohol can severely interfere with the brain's ability to function, making it harder to think clearly and move with coordination. *See* National Institute on Alcohol Abuse and Alcoholism, *Alcohol's Effect on Health*.[3] The defendant irresponsibly made the choice to illegally carry a firearm while consuming alcohol—an inherently risky behavior.

In addition to the loaded 9 millimeter Glock 43 that was recovered from the defendant's waistband, a second firearm was recovered the night of the defendant's arrest from the

---

[1] https://mpdc.dc.gov/node/197622

[2] https://mpdc.dc.gov/sites/default/files/dc/sites/mpdc/publication/attachments/Annual%20Report%202023_READER_lowres.pdf

[3] https://www.niaaa.nih.gov/alcohols-effects-health/alcohols-effects-body

defendant's Mercedes Benz. This second handgun was located on the driver's side floorboard and was a black binary 9 millimeter Glock 17 that contained one round in the chamber and 27 rounds inside of a large capacity feeding device that was capable of carrying 31 rounds. An extended magazine is designed to expel more bullets without having to reload.

Having a felony resulting from a previous conviction for a firearms offense, the defendant chose to carry a firearm on her person the night of January 14, 2025, while drinking, and stored a second firearm with an extended magazine in her car. For these reasons, a sentence that includes incarceration is warranted and appropriate.

2. The Defendant's History and Characteristics

The defendant's criminal, including arrest, history demonstrates a pattern of mixing alcohol or marijuana while operating a motor vehicle. As outlined in the PSR, ¶ 30-31, the defendant has been previously convicted of Driving Under the Influence of Alcohol in March 2010 and Carrying a Pistol Outside of a Home/Business in 2014. On December 23, 2009, the defendant was pulled over for speeding and asked to present her license to the attending officer. Upon doing so she revealed a bottle of vodka in her purse; the Arlington County Police Department Incident Report indicated that she had a blood alcohol content (BAC) of 0.09%. She reported to the arresting officer that she had been drinking at a "hotel party".

Less than four years later, on August 25, 2013, the defendant was pulled over after conducting an illegal left turn. After being asked by one of the two attending officers, the defendant rolled down the windows of the car. Upon doing this, one of the attending officers detected a burnt THC odor as well as a smell consistent with that of an alcoholic beverage on the defendant's breath. The defendant was stepped out of the vehicle and asked to perform a field sobriety test but refused. The other passengers in the back of the defendant's car revealed a bottle

of Patron Silver to another officer and were subsequently asked to all exit the vehicle. Upon doing so, an officer observes a handgun on the floor of the car in front of rear passenger seat. The handgun was a Hi-point 9mm Model C9 that was loaded with seven rounds in the magazine and one in the chamber. After conducting a search of the rest of the vehicle incident to an arrest, the officers found several other open containers of alcoholic beverages. The defendant admitted that the firearm was hers. Despite this previous encounter and subsequent conviction, the defendant again placed herself in the same situation when she engaged in similar conduct underlying this case.

Furthermore, the defendant received six months suspended sentence on January 31, 2014 for the CPWL, one year probation, and three years of supervised release. While on probation, on March 6, 2024, the defendant was again arrested for possession of marijuana. Though the marijuana arrest was no-papered, she was on probation at the time of her arrest. The defendant has been arrested and/or charged with multiple similar offenses in the past, and prior sentences have proved ineffective at deterrence.

3. The Need to Promote Respect for the Law and Deterrence

Despite a previous conviction for carrying a pistol without a license, the defendant again committed a firearms offense by carrying one firearm on her person and transporting a second firearm in her car, all the while drinking in public with associates who possessed illegal narcotics like fentanyl, crack cocaine, and PCP. A sentence of 5 months confinement followed by 5 months of home confinement is necessary to address the defendant's recidivism and promote respect for the law.

4. Other factors

According to the JSIN, the average length of imprisonment for a similarly situated

defendant is 9 months and the median length is 10 months. Here, the government's requested sentence is at the bottom of the guidelines at 10 months and on par with the average and mean sentence. Because the Guidelines Range falls within Zone C, the Government requests that this sentence be evenly split into two periods. The first 5-month period should be spent in confinement to account for the repeated nature of her conduct and the circumstances of the offense, followed by a 5-month period of home confinement as a condition of supervised release to credit the defendant for her compliance during the pendency of this case, her efforts in seeking employment and her role as the caretaker for her young daughter.

## CONCLUSION

For the foregoing reasons, the Government recommends that the Court sentence the defendant to 5 months of confinement followed by 5 months of home confinement. The Government also respectfully requests that the Court order forfeiture of the 9 millimeter Glock 43 (S/N AFRK401) with 7 rounds of ammunition and the 9 millimeter Binary Glock 17 (S/N CDFL829) with 28 rounds of ammunition, pursuant to the plea agreement.

Respectfully submitted,

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY

By:   */s/ Iris Y. McCranie*
IRIS Y. MCCRANIE
Assistant United States Attorney
NY Bar No. 5011234
601 D Street, NW
Washington, DC 20530
(202) 252-7828
Iris.mccranie@usdoj.gov